IN THE UNITED STATES' DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AZUBUKO - <br> Plaintiff <br><br> vs. <br><br> COMMISSIONER OF POLICE – CITY OF <br> BOSTON and MASSACHUSETTS' SUFFOLK <br> DISTRICT ATTORNEY - <br> Defendants | CIVL ACTION NUMBER: <br> 05-094-SLR <br><br> FILED <br> APR 2 5 2005 <br> U.S. DISTRICT COURT <br> DISTRICT OF DELAWARE |

**PLAINTIFF'S FIRST MOTION FOR RECONSIDERATION**

The Plaintiff received the Court's "MEMORANDUM ORDER" stamp and hand dated April 13th on April 16th, 2005. These would be the bases for the head:

01)    All the Plaintiffs cases in the Court had been assigned to Judge Robinson only! In an unrelated case and motion, Judge Robinson stated the basis for reconsideration, thus: "The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." Recently, the Plaintiff had been doing so and prayed that Judge Robinson would interpret the law on the bases of intellectual courage, intellectual humility and faith-to-reasons. The Plaintiff read a newspaper while researching the bases for the motion. It stated thus: "All that it takes for evil men to seize the world and corrupt it is for good people to sit down do nothing. [Burke, Edmund – British Philosopher]

02)    The gists of the case were false arrest and malicious prosecution. They had been proven not <u>on the balance of probabilities</u>, but <u>beyond any reasonable doubt</u>. The qualification for them had been courageously met - the person asserting them had to be tried and acquitted or the charges were dismissed. That applied to the matter in question! Therefore, it would be palpably intelligent to say/ing that the case lent itself to **STRICT LIABILITIES**. The truth could be tested. The Judge Robinson knew what the Plaintiff drove at. If she failed, the Plaintiff would say that: "There is no witness so terrible, no

accuser so potent, as the conscience that dwells in every man." [Polybius] As had been known, "Justice must be rooted in confidence and confidence is destroyed when right-minded people go away thinking: The judge is biased." [Lord Denning (MR): *Metropolitan Properties Co Ltd v. Lennon* (1969) QB 557 @ 559] The Plaintiff would address himself serially to the primary and secondary bases for dismissal.

03) Before the Plaintiff engaged on that, the Plaintiff would like to say that the listing of Plaintiff's filed cases had no bearings to the matter in question. Seeking grievances redress was not a crime. Malicious prosecution existed to check frivolous lawsuits. The Court knew the history of the judiciary in the United States, therefore, the Plaintiff's particularization on them would not be intelligent. Excerpts read:

"It is deeply distressing that the Department of Justice, whose mission is to protect the constitutional liberties of the people of the United States, should even appear to be seeking to subert them by extreme and dubious legal argument." [*United States v. Chadwick*, 433 U.S. 1 at 16 (1976)]

"Loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." [*Elrod v. Burns*, 427 U.S. 347; 6 S.Ct. 2673; 49 L.Ed.2d (1976)]

"There can be no sanction or penalty imposed upon one, because of his exercise of constitutional rights." [*Miller v. United States*, 230 F.2d. 486, 490; 42]

04) On "STANDARD OF REVIEW," the Plaintiff would snatch at the opportunity for thanking Judge Robinson immeasurably for granting the filing fee waiver. Indeed, if it were not for the disappointments of the judiciary, the Plaintiff would not have engaged on the measure. Well, life had been likened to okra soup, it should not be eaten mechanically. However, to dismissed on the basis of the fee waiver grant amounted to *equitable* and *representation/al estoppels*. The Defendants were not immune from prosecution owing to Equal Protection and Due Process Clauses. Excerpts in that regard read thus:

"There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign." [*Cooper v. O'Conner*, 99 F.2d 133]

"The U.S. Supreme Court has stated that "no state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." See also *In Re Sawyer*, 124 U.S. 200 (188..); *U.S. v. Will*, 449 U.S. 200, 216,

101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821)]

06) The dismissal associated with the Third Circuit – "if a claim is based on facts that provide no basis for the grant of relief by the court, the claim must be dismissed." The measure Judge Robinson embarked upon by accident or design were what prevailed in the cases of *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388 (1971) and Bell v. Hood, 327 U.S. 678 (1946). Eventually, the Supreme Court granted certiorari. In the case of *Madbury v. Madison*, Chief Justice Marshall provided counter-viewpoints from what Judge Robinson deemed superlatively judicious to justify dismissal, thus:

"It is most true that this Court will not take jurisdiction if it should not, but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other will be treason to the constitution. As the comment recognizes, because judicial review grows out of the fiction that courts only declare what is in specific cases. [http://caselaw.lp.findlaw.com/data/constitution/article03/13/html#7]

07) Glory, the case was filed under Section 1983 and Judge Robinson had no problem with that. The only basis was that: "Considering the plaintiff has fialed to identify defendants by name or to mention them as personally involved in any of the alleged constitutional violations, it is clear he seeks to hold defendants liable for their roles as supervisors." The Plaintiff needed not thus: "Plaintiff had failed to delineate any conduct that would implicate either defendant in supervisory liability under Section 1983. [*Faragher v. City of Boca Raton*, Florida (City) U.S. No. 97-282; *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct 2427 (1985), Justice Brennan prophesied that "there may be many ways of proving the existence of municipal policy of custom that can cause a deprivation of a constitutional rights." One such avenue that is regularly litigated is the theory that the government failed to properly train its employees in the particular area at issue in the litigation. This theory gained prominence with the Supreme Court's issuance of its decision in *City of Canton v. Harris*, 489 U.S. 378, 109

S. Ct. 1997 (1989)] It made no difference whether the Plaintiff filed the suit under individual or official capacity. What was guaranteed was the employer or *master respondeat* would indemnify the Defendants on either basis. [Massachusetts Torts Liability Act (MTLA); Massachusetts' General Law Chapter 258 Sections 4-10] Therefore, individual or official capacity was long as it was broad; it was chalk and cheese – nothing to choose from.

08) More, suing on the basis of individual or official capacity was palpably insignificant. As already stated, the scope-of-employment was governed by the state law. [*Lawson v. United States*, 103 F.3d 59, 60 (8th Cir. 1996); Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 8(f); *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Boykin v. District of Columbia*, 484 A.2d 560, 562 (D.C. 1984)] In the case of *Stokes Billy v. Cross, Steven*, U.S. District Court of Appeals No. 02-5120, the District Court for the District of Columbia dismissed just like Judge Robinson, but it was reversed and remanded; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 761 (199..); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70-71 (1986); *Railrod Co. v. Hanning*, 82 U.S. 15 Wall (1872) ("The rule extracted from the cases is this: The principal is liable for the acts of negligence of the agent in the course of his employment, although he did not authorize or know of the acts complained of);" *Jones v. City of Chicago*, 856 F.2d (7th Cir. 1988); **Rosenthal & Co. v. Commodity Trading Comm'n**, 802 F.2d 963, 967, (7th Cir. 1986) (the doctrine of respondeat superior doctrine about employers and *** other principals)] Without circumlocution, the Plaintiff had met the requirements for vicarious liability – "**employment relationship, employee's wrongful acts and scope of employment.**" Not inclusion of the Employees name never meant "if liability could not be enforced against the employee, the employer's vicarious liability stood extinguished by the common-law doctrine of servant's release." [*Sisk v. J.B. Hunt Transport, Inc.*, Supreme Court of the State of Oklahoma, No. 2003 OK 69 94288; *Mid-Continent Pipeline v. Crauthers* (clippings omitted); *Sochanski v. Sears, Roebuck & Co.*, 689 F.2d 45, 50 (3d Cir. 1982); *Tromza v. Tecumseh Prods. Cp.*, 378 F.2d 601, 605 (3d Cir. 1967; Restatement (Second) of Agency Section 401(d); *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951)]

09) Glory, Judge Robinson constructively acknowledged the Plaintiff's meeting the standards for Section 1983 at page eight. Therefore, the primary basis for

dismissal was "… the complaint remains flawed due to the court's inability to exercise personal jurisdiction over defendants." It would be mountainously advantageous to note that when false arrest and malicious prosecutions prevailed, it was synonymous to "interference with prospective economic advantages" or "liberty of contracts." Then, it equally meant deprivation of commercial opportunities. Therefore, the case lent itself to the Anti-trust Law. [15 USC Section 1; The Clayton Antitrust Act (1914); The Sherman Antitrust Act (1890)] The bases for in personal or general jurisdiction existed! [15 USC Sections 4,9,15,22,26 and 27; Article III Section 2] These statutory basis for jurisdiction would be exhibited – 28 USC Sections 1651 and 2201(a). [Exhibits 1 and 2] Jurisdiction existed under *federal question*. [28 USC Section 1331; Fed. R. Civ. P. 4(c), (e), (i) and (k); 42 USC Sections 1981, 1983, 1985(3), 1996 and 1994; *In re Automotive Refinishing Paint Antitrust Litigation*, 3d Cir., No. 02-4272, 2/13/04); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. Of Iowa*, 482 U.S. 522 (1987) (discovery could proceed under the Federal Rules rather than under the Hague Convention); The U.S. Law Week – Third Circuit Broadly Construes Clayton Act (Volume 72 Number 32 – Tuesday March 2 – 2004 ISSN 1522-4317] In the Third Circuit case – *Pinker, et al. v. Roche Holdings Ltd.*, (Nos. 00-4318 and 01-1562) (appealed from the United States' District Court for the District of New Jersey D.C. Civ. No. 99-cv-05627: District Judge: Honorable John W. Bissell, Chief Judge) excerpts read:

> "The District Court dismissed Pinker's complaint under both Fed. R. Civ. P. 12(B)(2) (for lack of personal jurisdiction) and Fed. R. Civ. P. 12(b)(6) (for failure to adequately please reliance). In reviewing the District Court's dismissal of Pinker's complaint under Fed. R. Civ. P. 12(b)(2), we examine the extent of Roche's contacts with the United States as a whole. We think that by sponsoring ADRs that are actively traded by American investors, Roche purposely availed itself of the American securities market and thereby evidenced the requisite minimum contacts with the United States to support the exercise of personal jurisdiction by a federal court. Moreover, in light of the fact that Roche is alleged to have made affirmative misrepresentations that misled its ADR holders, we consider the exercise of personal jurisdiction over Roche consistent with "traditional notions of fair play and substantial justice." *In'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Consequently, we conclude that the District Court had in personam jurisdiction over Roche and that dismissal under Rule 12(b) (2) was inappropriate."

> "Where Congress had spoke by authorizing nationwide service of process, therefore, as it has in the Securities Act, the jurisdiction of federal court need not be confined by the defendant's contacts with the state in which the federal court sits. See

*DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Following this reasoning, the district courts within this circuit have repeatedly held that a "national contacts analysis" is appropriate" when appraising personal jurisdiction in a case arising under a federal statute that contains a nationwide service of process provision." *AlliedSignal, Inc. v. Blue Cross of Calif.*, 924 F.Supp. 34, 36 (D.N.J. 1996); see also *Green v. William Mason & Co.*, 996 F.Supp. 394, 396 (D.N.J. 1998) ("[A]n assessment of personal jurisdiction under [a statutory provision authorizing nationwide service of process] necessitates an inquiry into the defendant's contact with the national forum."). We too are persuaded by the reasoning of our prior decisions on the subject, and consistent with several of our sister courts of appeals, hold that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rest on a federal statute authorizing nationwide service of process. See *Republic of Panama v. BCCI Holding (Luxembourg) S.A.*, 119 F.3d 935, 946-47 (11th Cir. 1997); *Busch v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); ..."

10) In legal and judicial axis there existed doctrinal controversies. In essence, there had been bases where cases were dismissed for lack of general or *in personam* jurisdiction. Where there existed conflict of law, the resolution would be in manners more favorable to the plaintiffs. Of course, all Judges and Attorneys would not be same in terms of specialties or experience. Factly, sometimes, chalk would not be cheese! Therefore, it would not be intelligent to bury oneself in either judicial or legal traditionalism or modernism; the most desirable approach would be situationalistic approach and that lent itself in favor of the Plaintiff presently.

11) The interpretation of federal question was independent of any State's long-arm statute. Contacts with forum State was invaluable if the case were in the State's court. That was not the case with the case. Jurisdiction existed under contacts with the sovereign, which created the Court. Jurisprudentially, the Plaintiff stance never amounted to impossibility. If *stare decisis* would be honored, of course Equal Protection and Due Process Clauses would prevail majestically. [*Willingway Hospital, Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102, 1107 (S.D.Ga. 1991); *Duckworth v. Medical Electro-Therapeutics, Inc.*, 768 F.Supp. 822, 830 (S.D.Ga. 1991); *Cannon v. Gardner-Martin Asphalt Corp. Retirement Trust-Profit Sharing Plan*, 699 F.Supp. 265, 267-68 (M.D.Fla. 1988). Excerpts read:

"The national contacts doctrine provides that in federal question cases, the court Has personal jurisdiction over defendants when there is a statutory provision for nationwide service of process and defendants have sufficient contacts with United States,

not the state in which the federal court sits. *Federal Trade Commission v. Jim Walter Corp.*, 651 F.2d 251, 256-57 (5th Cir. Unit A July 1981)."

"But *see Stafford v. Briggs*, 444 U.S. 527, 552-54, 100 S. Ct. 774, 789, 63 L.E.2d 1 (1980) (Stewart, J., dissenting (joined by Justice Brennan) ("Due process requires only certain minimum contacts between the defendant the sovereign that has create the court. The issue is not whether it is unfair to require a defendant to assume the burden of litigating in an inconvenient forum …)."

12)   The transfer of the Plaintiff's cases to Massachusetts was tantamount to condemnation of the Plaintiff to injury of law. It was constitutionally and morally unintelligent. The Courts had jurisdiction under "expanded venue intended" and "federal question." The composition of Article III was crystal clear, but the Judges elected to act dubiously under the color of administration of justice. Succinctly, it somewhat defied logic that they elected insidious and invidious act! The Plaintiff did not "… lacks any relationship, plaintiff is effectively circumventing the standing order issue by the United States District Court for the District of Massachusetts, the proper court for venue." The theory of where one is born is where one would die and buried' had been palpably anachronistic – it had fallen into abeyance. "Then is not now." With candor in communications, anyone who would restrict one's access to the court should have appointments with psychiatrists. [*Harrison v. Springdale Water & Sewer Comm.* (1986, CA8 Ark) 780 F2d 1422; *Armstead v. Pingree* (1986, MD Fla) 629 F Supp 273)]

13)   The proverbial and notorious measure Judge or Injustice Young embarked against the Plaintiff was diametrically immoral and unconstitutional. The September 6th, 1995 action ought not to be; there was palpable conflict of interest. The Plaintiff recently learned that Injustice Young used to be a Massachusetts' Judge prior to his federal appointment. Consequently, there was a conflict of interest and he needed no hand holding to know that he should not preside over the case and he elected to do in violation of legal ethics. No wonder he wobbled over the case and it was perjury and treason. The Plaintiff did not see a modicum of rationale to obey the September 6th 1995 saga. It was cowardice and diametrically unconstitutional. It meant calculated deprivation of the Plaintiff Equal Protection and Due Process Clauses. It was constructive condemnation of the Plaintiff Dark Code and Jim Crow eras. What justified the hand holding prior to commencement of proceedings for the Plaintiff? It really defied logic; the Plaintiff in a

state of grace had manifested no diminished responsibilities. In all modesty, educationally the Plaintiff had washed his hands. Respect should be reciprocal; the master-servant relationship, which associated with the restrictive measure never augured well for humanity individually or collectively.

14) On the case of *Azubuko v. Board of Bar Overseers of the Supreme* Judicial Court, C.A. 04-10192-WGY (D.Mass. 2004), Injustice Young presided over the case in March, 2004 at one of the Harvard's Law School auditoriums questionably. The Plaintiff drummed into his head that his actions were diametrically malicious, unconstitutional and undemocratic. Indeed, the Plaintiff would not comply with the unintelligent Orders he fashioned under the color of administration of justice. The "SOWETO" justice was reprehensible and preposterous. More, he characteristically dismissed the case under the color of lack of jurisdiction. That was the line of least resistance. The cancerous mindset was indeed palpable! With the self-same Defendant, Attorney Barbara Jones prosecuting, Injustice Young ruled that 11th Amendment would not constitute lack of jurisdiction and monetary compensation was in keeping with 42 USC Section 1983. He presided over the case in February 2004. [Exhibit 3] He committed *perjury* and should resign. He lacked the moral fiber vis-à-vis the incident to be a Judge any longer. Like ripped paw-paw, he fell and broke. The salt had lost its taste! How could it be restored? The Eli-like condescension should not be trivialized. "An *appropriate adult* should not abuse the soup."

15) How could the Plaintiff be fined for flies' blown or defective measure surrounding circumstances? Did he think that mankind are goats? Frivolous lawsuits, indeed, but on whose barometers? Why should an intelligent wo/man control what controlled itself? There was little or no time for chewing the fat! Upon the Plaintiff's honor, the Plaintiff never filed frivolous lawsuits. Realities could be constructed, but it never meant that it should be internalized without a pinch of salt. However, no reasonable and prudent person would deem it judicious to universalize her/his viewpoints; provision for ideological pluralism should be recognized intuitively and not doing so was underlining for a great of conclusion, though negatively. In life, "one he has to be modest, because much are achieved before one's birth." On the Order, that never interfered with the Plaintiff's thought, because the Plaintiff knew very well that it

was crassly unlawful and had no moral authority. The Plaintiff carried no eggs and would break no eggs. 'Everyone is a beggar before God: tomorrow is pregnant and nobody knows what it will deliver.'

16)   On *Azubuko v. Eastern Bank*, Civ. No. 05-031-SLR (D. Del. March 18, 2005) the case was characteristically dismissed. The Plaintiff was not electrified. Justice from time immemorial had been hoarded and expensive in some quarters! Well, it would be useful and helpful that 'justice is likened to water and air: nobody had been allergic to it.' Being an incubator for injustice never augured well for humanity microscopically and macroscopically. If need be, the Plaintiff would defend the case before the United States' Supreme Court. The Plaintiff was not the father of "red lining." The case had bearings on federal question, but was dismissed without moral qualm. [28 USC Section 1348] For inexplicable reasons, Judge Robin failed to do what would have been expected of any reasonable and prudent person [similarly situated with her] It would not augur well for humanity to be dancing Makrina at others' funerals. Certainly, if it became one's relative funeral, sober reflection would prevail. That had been life! The Plaintiff would never be ashamed of any case he filed – dismissed or favorably disposed. The Plaintiff was not a moronic child as many thought; the Plaintiff "know what is what," at all material times and not only on Christmas' and New Year's Eve. The Plaintiff wished that the cases were jury tried. They were dismissed despite the Plaintiff's patent petition for jury trial. Indeed, the Plaintiff could read between the lines without a great deal of hardship. Again, the Plaintiff would file cases if need be and let her/him or those whom the Plaintiff sued frivolously and maliciously as concluded resume, *malicious prosecution* against the Plaintiff. The Plaintiff was not above the law! Again, the Plaintiff would never condescended to filing frivolous cases. The Plaintiff knew "what is what" and any case the Plaintiff filed was resoundingly justifiable before God let alone mankind. Glory, the cases had never been jury tried contrary to demand. [Seventh Amendment] Why?!! If that had happened, it would have been scientifically known if the cases were malicious and frivolous as condemned. Indeed, "a swallow should not make a summer."

## CONCLUSION

On more scores than one, the Plaintiff had proven to Judge Robinson "not on the balance of probabilities, but beyond any reasonable doubt" that jurisdiction and venue

were superlatively intelligent. Neutral administration of justice should be held at premium; it had been likenable to water and air – nobody had been allergic to it. In essence, any one who unquestionably believed in inter-generational equity would not pollute the streams of justice without moral qualm. The primary and secondary bases for dismissal of the case had been proven to be fatally flawed and if faith-to-reasons should be cherished and honored, the decision was a recipe for revision. Humility never meant peccadillo! All knives would return to knife-smiths and one day all souls would return to their Creator. Time had not proven to be a friend to mankind despite being played with sheepishly. Injustice should be seen as an untamed snake and no sane wo/man should make it a pillow. Nonetheless, "an educated wo/man should not eat for eight hours."

By concerted effort, the system would work for all not temporarily, but lastingly. Pulverization propensity never meant salubrious administration of justice. Those counseled should listen, because God's judgment on earth would be terrible: nobody knew everything about life absolutely. It would not be intelligent to stop thinking about tomorrow. The Plaintiff genuflected and prayed for interpretation of the matchless Law without fear or favor. If only Judge Robinson would listen, she inevitably would hear the voice of the Plaintiff. One should not deem it judicious to kill her/his sibling/s. The Plaintiff had painstakingly done "what are expected of any reasonable and prudent person" similarly situated with the Plaintiff. The ball would be in the court of Judge Robinson. Hopefully, time and energy would be maximized if not optimized individually and collectively. Much had been executed; simultaneously, more would have been executed! The Plaintiff could empathize. Despite the difficulties, could the optimum fear of God trigger off the predisposition to act in keeping with the rule of law and natural justice. What mankind encoded, but God decoded!

Respectfully submitted from Boston, Massachusetts on Wednesday – April 20th – 2005.

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 265 6291.

## CERTIFICATE OF SERVICE

The Plaintiff did not serve the Defendants with the head for avoidance of legal ingratiation. The case, of course, suffered judicial preemption. Generally, Complaint associated with an Answer. That was knowingly killed!

_____
CHUKWUMA E. AZUBUKO,
Pro Se.